AO 91 (Rev. 11/11) Criminal Complaint                    AUSA Devlin N. Su (312) 886-0667

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FILED**

JUL 01 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

GASTON TUCKER

CASE NUMBER:

19 CR 541

**CRIMINAL COMPLAINT**

MAGISTRATE JUDGE VALDEZ

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about February 17, 2019, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
| --- | --- |
| Title 18, United States Code, Section 922(g)(1) | knowing that he previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, a firearm, namely, a loaded Smith & Wesson .40 caliber model SW40VE semiautomatic pistol, bearing serial number DSE1667, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

ALISON FOY
Special Agent, Federal Bureau of Investigation (FBI)

Sworn to before me and signed in my presence.

Date: July 1, 2019

*Judge's signature*

City and state: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

ss

## AFFIDAVIT

I, ALISON FOY, being duly sworn, state as follows:

## I.   PRELIMINARY MATTERS

1.   I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately August 2014.

2.   As part of my duties as an FBI Special Agent, I investigate criminal violations relating to violent and gang-related offenses, including narcotics trafficking and firearms offenses.

3.   This affidavit is submitted in support of a criminal complaint alleging that, on or about February 17, 2019, GASTON TUCKER violated Title 18, United States Code, Section 922(g)(1) when he, knowing he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, a firearm, namely, a loaded Smith & Wesson .40 caliber model SW40VE semiautomatic pistol, bearing serial number DSE1667, which firearm had traveled in interstate commerce prior to his possession of the firearm (the "**Subject Offense**"). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging TUCKER with committing the **Subject Offense**, I have not included each and every fact known to me concerning this investigation. I have set forth only the

facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4.      The statements in this affidavit are based on my personal knowledge; information provided by other law enforcement agents, including Chicago Police Department (CPD) police officers; video recorded by CPD bodyworn cameras and in-car cameras and by exterior security cameras; and lawfully recorded telephone calls of TUCKER from Cook County Jail.

## II.     FACTS ESTABLISHING PROBABLE CAUSE

### A.      Arrest of TUCKER on February 17, 2019

5.      On or about February 17, 2019, a CPD officer observed a red Nissan sedan illegally parked in front of a fire hydrant in the area of 1330 N. Sedgwick Street in Chicago, Illinois. The officer approached the car and asked for identification from the car's occupants. The driver, Individual A, provided a suspended driver's license. TUCKER, who was seated in the backseat, provided an Illinois Department of Corrections identification card in his name. TUCKER was wearing a black jacket, gray pants, and a black knit hat.

6.      As the officer went back to her car to look up the identifications provided, she observed TUCKER leave the car and run southbound on Sedgwick Street. She pursued in her vehicle, but did not find him.

7.      Other officers responding to the scene began canvassing the area. As they did, two private security guards, who were then-employed to guard the nearby Evergreen Towers housing complex, approached the officers. According to the

security guards, they observed an unknown male run through the complex and drop an object underneath a parking lot dumpster before continuing through a gate. The guards directed officers to that dumpster. Underneath the dumpster was a Smith & Wesson .40 caliber model SW40VE semiautomatic pistol, bearing serial number DSE1667 ("the pistol"), which was loaded with approximately 14 live rounds.

8.      Officers then viewed security video recorded by external security cameras located in a parking lot in the area of 1310 N. Sedgwick Street and in a parking lot in the area of 414 W. Goethe Street.

9.      The security video taken by the 1310 N. Sedgwick Street parking lot camera showed, at approximately the same time that the traffic stop of the Nissan occurred, flashing blue lights from the CPD officer's vehicle. An individual wearing a black jacket, gray pants, and a black knit hat—the same clothing that TUCKER was wearing—can be seen running from the area of the flashing blue lights down Sedgwick St., before making a right turn and then cutting through the parking lot, directly across the field of view of the security camera, and then out of sight.

10.      The security video taken by the 414 W. Goethe Street parking lot camera shows an individual wearing a black jacket, gray pants, and a black knit hat—the same clothes as TUCKER was wearing—run down Sedgwick Street, take a right turn on Goethe Street, and run directly past the field of view of the security camera. The individual ran towards a fence gate, passing a dumpster sitting right next to the gate. As the individual approached the gate and tried to open it, he bent his knees and appeared to toss an object that appeared to be a handgun under the dumpster.

3

That dumpster was the same one under which officers later recovered the pistol, as described above in paragraph 7.

11.    Officers subsequently arrested TUCKER at a residence located at 2026 N. Kostner Avenue, Apartment 3W, Chicago. After TUCKER was taken into custody, the same CPD officer who conducted the stop on the Nissan positively identified TUCKER as the individual who ran from the car.

**B.    TUCKER's Criminal History**

12.    According to law enforcement databases, on or about July 19, 2010, in the Circuit Court of Cook County, Illinois, TUCKER was previously convicted of attempt murder and aggravated battery with a firearm and sentenced to 13 years' imprisonment in the Illinois Department of Corrections (IDOC).

13.    Law enforcement has obtained a copy of the Project Safe Neighborhoods notification letter provided to TUCKER upon his release from IDOC custody. The letter states: "Your name has been given to federal law enforcement agencies because of your arrest and prosecution by state and local authorities. . . . As a convicted felon, you can be prosecuted in federal court even if you only possess a gun." The letter reflects that TUCKER acknowledged that he received the letter by signing it on March 22, 2019.

**C.    Interstate Travel of the Pistol**

14.    Law enforcement has spoken to an employee of Smith & Wesson (the pistol's manufacturer) who is familiar with the location of manufacture of the pistol. According to that employee, parts of the pistol were manufactured in Connecticut and

Massachusetts, and the pistol was assembled in Massachusetts. Therefore, the pistol traveled in interstate commerce prior to defendant's possession of it in the State of Illinois on February 17, 2019.

15. Law enforcement has test-fired the pistol, and found it to be operable.

**D.   TUCKER's Jail Calls**

16. After his arrest, TUCKER was held in the custody of the Sheriff of Cook County, Illinois at Cook County Jail. Law enforcement has obtained and reviewed recordings of telephone calls made using his inmate account there. For each of the following summarized calls,[1] TUCKER identified his name as the caller at the beginning of each call. Additionally, the participants on each call were informed that the call may be monitored and recorded, and that their use of the telephone system constituted consent for that monitoring and recording.

17. On certain of these calls, TUCKER made incriminating statements regarding his possession of the pistol on February 17, 2019. For example:

a. On or about February 20, 2019, at approximately 12:58 p.m., TUCKER stated, "Boy, I quit . . . I ain't carry no pole [slang for a firearm] no more, I'm through. Only way I gotta do that is I gotta get out of Chicago . . . I can't be without

---

[1] Throughout this affidavit, I describe various telephone calls that were recorded by Cook County Jail. These descriptions often include my understanding of what is being said during such conversations in brackets or otherwise. This understanding and interpretation of the conversations is based on (i) the content and context of the conversations, (ii) my experience and my fellow agents' experiences as law enforcement officers, including our experience investigating firearms offenses and violent crimes, and (iii) the investigation to date. The summaries of the recorded conversations set forth in this affidavit are based on draft—not final—transcriptions completed by law enforcement. Finally, the summaries contained herein do not include all potentially criminal communications recorded, or topics covered during the course of the recorded conversations.

it in Chicago, you know how that shit go [TUCKER needed to carry the pistol for protection in Chicago]."

      b.    On or about February 20, 2019, at approximately 1:17 p.m., TUCKER stated, "I've been thinking about a lot of shit too, you know what I'm saying. Everything happens for a reason, man. Everything happens for a reason, man. Think about it, man, this summertime, what I was doing, where I was headed this summertime, man, I would have gotten caught shooting that motherfucker [TUCKER believed that he would have been eventually caught shooting the pistol if he hadn't been arrested] . . . Anything, man, anything, that would have been life in this bitch [TUCKER could have gotten life imprisonment for shooting someone], you might as well say. I would rather take the [u/i]-and-a-half years [an anticipated term of imprisonment for illegally possessing the pistol] now and get on with my life."

      c.    On or about February 21, 2019, at approximately 8:21 a.m., TUCKER stated, "When it comes to that pole [the pistol], man, it just is what it is when it comes to me. Every motherfucker knows who I am. And like [ui] was telling me when I was out, like, 'Man, you don't know these little niggas. Niggas will try to get up on you and do stuff to you, and woo woo woo, woo woo woo.' . . . . My old man, he was telling me shit like that, how do you think that plays with a motherfucker's conscience? I can't let a motherfucker get up on me. I don't give a fuck who they is. You ain't getting up on me [TUCKER possessed the pistol for protection on the street]."

d.      On or about February 21, 2019, at approximately 11:59 a.m., TUCKER stated, "By the time the summertime came and shit would have been going down, they right in the middle of that bitch [TUCKER believed he would have been involved in gun violence during the summer of 2019]. I be locked up for attempt murder, murder. Or what if I just locked up for shooting my gun, period? That would have hurt, hurt, hurt. This don't hurt [TUCKER is glad he was arrested for possessing the pistol instead of shooting the pistol because he faced significantly less prison time]."

e.      On or about February 26, 2019, at approximately 11:45 a.m., TUCKER had the following conversation with an unknown female (UF):

| | |
|---|---|
| **UF:** | You should never have even went and got it [the pistol]. |
| **TUCKER:** | Why not? |
| **UF:** | You ain't need it [the pistol]. The stories I heard, you didn't need it. |
| **TUCKER:** | What stories you heard? |
| **UF:** | There's enough people that had some [other people TUCKER was with that night had guns of their own]. And you shouldn't have ran [TUCKER shouldn't have run from the traffic stop]. |
| **TUCKER:** | Why not? |
| **UF:** | For what? They weren't chasing you [the police didn't stop the car to look for TUCKER]. |
| **TUCKER:** | He had no motherfucking license [the driver of the car didn't have a valid driver's license] and they would have searched the car. Right. |
| **UF:** | Ok. So it was on you [TUCKER had the pistol on his person]? |

**TUCKER**: Yeah.

**UF**: Why you ain't put it under the seat [why didn't TUCKER hide the pistol under the car seat]?

**TUCKER**: On the seat, you never lie, trying too much of a real nigga [TUCKER would rather run with the gun than hide it]. That's it.

**UF**: All you had to do was say you didn't know what was in the car. It's not yours [TUCKER should have left the pistol in the car and said that it wasn't his].

**TUCKER**: Too much of a real nigga, man. That's it. I learned my lesson anyway.

III.    **CONCLUSION**

18.    Based on the above information, there is probable cause to believe that, on or about February 17, 2019, at Chicago, Illinois, GASTON TUCKER, knowing he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely, a loaded Smith & Wesson .40 caliber model SW40VE semiautomatic pistol, bearing serial number DSE1667, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1).

FURTHER AFFIANT SAYETH NOT.

ALISON FOY
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me on July 1, 2019.

MARIA VALDEZ
United States Magistrate Judge

9