UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| | ) | No. 19 CR 541 |
| v. | ) ) | Judge Thomas M. Durkin |
| GASTON TUCKER | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Gaston Tucker was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on evidence found during and after he fled on foot from a traffic stop. Mr. Tucker moved to suppress the prison identification card recovered during the traffic stop, any statements he made during the stop, and the two videos of the stop, arguing that the stop violated his Fourth Amendment rights. R. 25. For the following reasons, Mr. Tucker's motion is denied.

**Background**

There is little dispute about the underlying facts, which were largely captured by Chicago police officer Carmen Mostek's body-worn and squad car cameras, and the security cameras of a nearby housing complex. On February 17, 2019, Mr. Tucker was sitting in the backseat of a red car stopped in the parking lane beside a fire hydrant at the intersection of Sedgwick and Evergreen in Chicago when Officer Mostek approached in her squad car. The red car's doors were closed. A white car was stopped in the traffic lane next to the red car with its front passenger door open. An individual later determined to be the driver of the red car was standing near the white car's open front passenger door, speaking to its occupant(s).

As Officer Mostek drew closer, the individual in the street walked over to the red car, and the white car drove away. The individual then opened the driver's side door of the red car and got in. He drove the red car forward approximately one or two feet before stopping once more, still within a few feet of the fire hydrant. The red car's rear passenger door then opened, and Mr. Tucker started to get out. At that point, Officer Mostek activated her emergency lights. Mr. Tucker got back into the car and closed the door. Officer Mostek activated her body-worn camera, and approached the car on foot. She asked the driver for his license and insurance, and explained "[t]he reason I pulled you over is because you're parked in front of a fire hydrant." The driver told Officer Mostek that he was dropping someone off and that "he live right there," to which Officer Mostek replied "OK, if everything looks good, I'll send you guys on your way." Officer Mostek then asked the driver to roll down the rear window and shined a flashlight into the backseat, where Mr. Tucker and a female passenger were sitting. Officer Mostek asked Mr. Tucker for his identification, and he handed her an Illinois Department of Corrections identification card. Officer Mostek asked if there was "anything in the car [she] should know about." The occupants told her there was not. Officer Mostek then returned to her squad car to run the driver's and Tucker's identifications. Shortly thereafter and while Officer Mostek was still in her vehicle, Mr. Tucker fled. Officer Mostek alerted dispatch and drove down Sedgwick to see if she could locate Mr. Tucker, but was not successful.

  Security camera footage recovered from a housing complex captured Mr. Tucker running down Sedgwick, making a right turn into the housing complex's parking lot, and then running down a sidewalk toward a metal gate. Just before he ran through the gate,

the footage shows Mr. Tucker tossing a pistol under a dumpster. Officers responding to the scene later recovered a loaded Smith & Wesson .40 caliber model SW40VE semiautomatic pistol from under the same dumpster. Defendant was arrested several hours later.

Mr. Tucker seeks to suppress what he contends are the "immediate and direct fruits of the illegal investigatory stop." R. 46 at 7. That is, his "prison ID, any statements made by him during the stop (which is not much) and the two videos of the stop." *Id.* at 8. Mr. Tucker acknowledges that his identity in general cannot be suppressed. *See id.* The parties agree that no hearing is necessary, and that Mr. Tucker's motion should be resolved on the evidence and argument before the Court.

## Analysis

The Fourth Amendment protects individuals from unreasonable searches and seizures. Mr. Tucker contends that Officer Mostek violated his Fourth Amendment rights because she lacked reasonable suspicion to believe that the red car in which he was a passenger was parked in violation of the Chicago Municipal Code, and therefore her investigatory stop was unlawful.

Under *Terry v. Ohio*, officers may stop and briefly detain a person for investigative purposes without violating the Constitution if they have reasonable suspicion supported by articulable facts that criminal activity may be afoot. 392 U.S. 1, 30-31 (1968). Reasonable suspicion is "more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) (quoting *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008)). Whether or not reasonable suspicion of criminal activity exists

3

to initiate a *Terry* stop is measured objectively based on the sum of all facts available at the time of a defendant's seizure. *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011). As such, "reasonable suspicion can arise from behavior that may in other circumstances be considered innocent; in other words, context matters." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015); *see also Jewett*, 521 F.3d at 824 ("certain behavior may give rise to reasonable suspicion when viewed in the context of other factors at play"). An officer may stop a vehicle when he or she has reasonable suspicion that the driver is breaking the law in that moment, is about to break the law, or previously broke the law. *United States v. Sholola*, 124 F.3d 803, 813 (7th Cir. 1997). And suspected parking-related offenses are sufficient to justify a *Terry* stop. *See United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015). However, if reasonable suspicion does not exist, the exclusionary rule applies to "kick [ ] out the unlawfully obtained evidence" recovered as a result. *United States v. Slone,* 636 F.3d 845, 848 (7th Cir. 2011).

The facts and context here meet the standard to justify a *Terry* stop. As Officer Mostek indicated to Mr. Tucker and the other occupants of the red car, she stopped the car because she suspected it was parked in violation of Chicago Municipal Code 9-64-100, which provides that it is "unlawful to park any vehicle . . . within 15 feet of a fire hydrant." Chi. Mun. Code § 9-4-100. Video evidence clearly depicts the red car stopped in the parking lane immediately beside a fire hydrant. Each of its four doors are closed.

But Mr. Tucker contends that reasonable suspicion to make the stop was lacking because the Chicago Municipal Code defines "parking" as "the standing of an *un*occupied vehicle otherwise than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers," and when Officer Mostek approached, the vehicle was occupied by himself and another passenger, and its engine was running. *Id.* § 9-4-010. But as the Seventh Circuit stated in *United States v. Johnson*—a case concerning a similar statute in Wisconsin prohibiting parking within 15 feet of a crosswalk—the Fourth Amendment "doesn't demand that police . . . resolve all possible [statutory] exceptions before approaching a stopped car and asking the first question." 874 F.3d 571, 573 (7th Cir. 2017). Instead, an officer "possessed of probable cause[1] can hand out tickets (or make arrests) and leave to the judicial process the question whether a defense, exception, proviso, or other limitation applies." *Id.*

Mr. Tucker attempts to distinguish *Johnson* on the basis of the statutory language at issue, contending that the relevant ordinance here defines "parking" to include only an "unoccupied vehicle," and that its "exceptions" for purposes of *Johnson* go only to whether the vehicle was stopped for purposes of loading or unloading passengers. R. 46 at 3. He continues that since the officer could observe people in the car when it was stopped, that should end the inquiry. But the Court declines to read *Johnson* so narrowly, when as shown its language also speaks to

---

[1] The court later made clear that the standard is reasonable suspicion. *Id.* at 573-74.

"defenses" and "other limitations," and there is no question that the vehicle was stopped beside a fire hydrant, and its driver was not behind the wheel. Indeed, a police officer approaching a car stopped next to a fire hydrant whether occupied or unoccupied is unremarkable and certainly proper, because there is reasonable suspicion that a parking violation has occurred.

Further, although Mr. Tucker acknowledges that Officer Mostek need not have resolved whether anyone had been entering or was then exiting the car prior to initiating the stop, it bears mentioning that because all four car doors were closed, that does not appear to have been the case here. And any contention that Mr. Tucker's having later begun to exit the car suggests that he was being unloaded is belied by the fact that immediately prior, the car had started to pull away. Instead, the Court views the circumstances as "inherently fishy" rather than "utterly ordinary" as Mr. Tucker urges; indeed, it was at least as likely that the driver's swift return to the vehicle, the vehicle's starting to pull away, and Mr. Tucker's brief attempt to exit was in response to the approaching squad car. *See* R. 46 at 6 (Mr. Tucker's reply brief, citing *Terry*, 392 U.S. 1). In short, because the red car in which Mr. Tucker was a passenger was clearly stopped in front of a fire hydrant when Officer Mostek began to approach and there was no evidence that anyone was entering or exiting the car at that time, Officer Mostek had reasonable suspicion to conduct her stop, without resolving whether or not the car was occupied or stopped only temporarily.

6

## Conclusion

For the foregoing reasons, the Court denies Mr. Tucker's motion to suppress, R. 25.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: June 12, 2020